IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JAMES MURPHY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:09-CV-309 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO
DENY PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner has filed with this Court a form Petition for a Writ of Habeas Corpus by a Person in State Custody challenging a prison disciplinary conviction. Petitioner is presently incarcerated pursuant to a 1987 conviction for aggravated sexual assault out of Harris County, Texas. In July 2009, petitioner was found guilty in disciplinary cause number 20090311787 of committing an offense defined by State law as a felony, i.e. engaging in organized criminal activity. The disciplinary proceeding took place at the Clements Unit in Potter County, Texas. As of the date the instant habeas petition was filed, petitioner remained incarcerated in the Clements Unit. As punishment, petitioner lost 180 days of good-time credits, remained at line class 3, received 15 days of recreation and cell restrictions, and received 45 days of commissary restrictions. For the reasons stated below, it is the opinion of the undersigned United States Magistrate Judge the petition should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In July 2009, while processing seized contraband, a corrections officer at the Clements Unit discovered a document outlining an investigation conducted by members of the gang Black Gangster Disciple. (Disciplinary Hearing Records (DHR), "Offense Report," signed July 15, 2009, pg. 3). The document set forth that an inmate by the name of Gerald Franks was "disciplined" by several of the gang's members for engaging in homosexual activity. (*Id.*). The document indicated Franks received six blows or strikes to the head and six blows or strikes to the body. (*Id.*, pgs. 3, 4). According to Corrections Officer J. Marler, who wrote the offense report, the letter was signed "Goat-G," a known alias of petitioner. (*Id.*). After evaluating the evidence, a disciplinary hearing officer found petitioner guilty and assessed punishment that included the loss of good-time credits. Both petitioner's step 1 and step 2 grievances were denied. The instant federal habeas corpus petition followed.

When the Court initially reviewed this case, it noted the disciplinary case record contained the letter discussing the assault of Franks, in which "Goat-G" participated and upon which the disciplinary case was based. (*Id.*, pg. 4). That letter was not signed. (*Id.*). On the next page of the record was a letter signed "Goat-G," but that document did not discuss Franks. (*Id.*, pg. 5). The cassette tape recording of the disciplinary hearing was mostly indiscernible. The Court ordered respondent to have the recording transcribed. The transcription, however, shed little light on what transpired during the disciplinary hearing, as the transcriber could also not make out most of the recording. The Court questioned whether the record contained any evidence directly linking "Goat-G," a.k.a. petitioner, to the Franks assault. To clarify the record, the Court held a hearing at which petitioner and counsel for respondent were present. The results of the hearing are detailed below.

II.
PETITIONER'S ALLEGATIONS

Petitioner never specifically stated any grounds of error. A liberal reading of the petition and memorandum attached to the petition indicate petitioner appears to contend:

1.       The evidence supporting the determination of guilt was insufficient.

2.       The disciplinary hearing notice was insufficient.

3.       Prison authorities lacked jurisdiction to prosecute the offense.[1]

Petitioner requests restoration of the revoked good-time credits, release from administrative segregation, and restoration of his line class.[2]

III.
THE DISCIPLINARY PROCEEDINGS

The Supreme Court has outlined the basic safeguards a custodian must take in all prison disciplinary proceedings to ensure such proceedings do not violate a prisoner's constitutional rights. *Wolff v. McDonnel*, 418 U.S. 539, 570, 94 S.Ct. 2963, 2981, 41 L.Ed.2d 935 (1974). Under *Wolff*, a prison must give a prisoner (1) adequate twenty-four hour advance written notice of the charges; (2) a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action; and (3) an opportunity to call witnesses and/or present documentary evidence if a witness cannot be called. *Id.* at 563-65, 94 S.Ct. at 2978-80. Regarding the evidence supporting the determination, "[t]he requirements of due process are satisfied if some evidence supports the

---

[1] The second and third points of error are an interpretation of the following statement: "The notice and unconstitutional tainted second hand hearsay and unreliable confidential informer evidences cause petitioner to sustained punishment and ad seg confinement in violations of Due Process protection of entitled rights, 2) jurisdictional would have been a competent issue for other courts to grant entitled relief." (Amended Petition for a Writ of Habeas Corpus by a Person in State Custody, doc. 5, filed Jan. 20, 2010, pgs. 8-9 (sic throughout)).

[2] Punishments dealing with confinement in administrative segregation, recreation, and line class are not cognizable in a habeas corpus action. *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 418 (1995); *Malchi v. Taylor*, 211 F.3d 953, 958 (5th Cir. 2000).

decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

### A. *Sufficiency of the Evidence*

Petitioner first contends the evidence was insufficient to support the determination of guilt. Specifically, petitioner avers Franks, who was identified as the assault victim in the letter discovered by the corrections officers, told petitioner's counsel substitute that he and petitioner were friends and Franks had no knowledge of any assault on him by the Black Gangster Disciples. Additionally, petitioner takes issue with respondent's failure to call Franks at the disciplinary hearing or any other of the gang members with whom petitioner conspired. Petitioner also complains there was no handwriting analysis indicating he was the one who wrote the letter detailing the assault and there was no specification of the date and time the assault occurred.

Disciplinary determinations "will not be disturbed unless they are arbitrary and capricious." *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). The federal court's role on review is only to "examine if the guilty finding has 'support of some facts' or 'any evidence at all.'" *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001).

In this case, the record contains a letter stating

> "INCIDENT REPORT"
> WHEN: 06/08/09 WHERE: 4 bldg. rec yard; WHO: Goat-G; Slim Thug-G; Chris-G; Cocaine-G; DJ-G; Linc-G; were presence, and Berto-G and Blaylock-G were absence, but all veted as the majority; WHY: AR-804 Issue: WHAT: Frank-G was found in violation of our Chairman's laws, and punishment was executed; physical - - 6 head/6 body.
>
> Summary of the facts and evidence: A homosexual letter was read by several "G"'s that Frank-G had written to an outsider a.k.a. Fly. This was suffcion for proof of homosexual activities which is prohibited and not tolerated.

(DHR, pg. 4 (sic throughout)). The page on which the above-quoted section appears is not signed,

though it does reference "Goat-G." (*Id.*).  The next page of the record continues in the same typed

font and style, but the subject matter is unrelated to Franks.  That document is hand signed

"Gangster Goat, a.k.a. G-6." (*Id.*, pg. 5).  From the face of the record, the two documents appear

unrelated.  At the hearing conducted by the Court, however, counsel for respondent indicated he had

personally reviewed respondent's full record and the two documents were, in fact, part of the same,

two-page-long letter, the substantial portion of which had been redacted by respondent before

production.  The record additionally contains an "Inter-Office Communication" from a sergeant who

reviewed the letter and compared the signature on the letter to a handwriting sample known to be

penned by petitioner Murphy.  (*Id.*, pg. 9).  The officer, who's credentials in handwriting comparison

are also included in the record, stated the handwritten signature at the end of the letter was consistent

with Murphy's handwriting.  (*Id.*, pgs. 9-10).

The Court notes the Offense Report incorrectly stated the letter was signed "Goat-G." (*Id.*,

pg. 3).  The end of the letter was signed "Gangster Goat, a.k.a G-6." (*Id.*, pg. 5).  The charging

officer who wrote the offense report, Sergeant Marler, testified via telephone at the disciplinary

hearing.  (Transcription of Cassette Tape Labeled Christopher Murphy - 468377, transcribed Dec.

17, 2010 [hereinafter "Transcription"], pg. 7).  At the hearing, Sergeant Marler testified petitioner's

aliases were "Goat G" and "Gangster Goat." (*Id.*, pg. 9).  In making the determination of guilt, the

disciplinary hearing officer relied not only upon the offense report but also upon Sergeant Marler's

testimony.  (DHR, pg. 2).  The documentary evidence, along with Sergeant Marler's testimony,

established petitioner, as "Goat G," conspired with other prisoners in the assault of a fellow inmate

and then created a written record of the assault, which he signed as "Gangster Goat." (*Id.*, pgs. 4-5).

At the prison disciplinary hearing and before this Court, petitioner has remained steadfast he is the only Black Gangster Disciple member in his institution of incarceration, and that he is retired from the gang.  Testimony of Sergeant Marler at the disciplinary hearing, however, indicated there were, counting petitioner, nineteen active members of Black Gangster Disciple located at the Clements Unit at that time.  (Transcription, pg. 17).  Sergeant Marler, a member of the security threat group at the Clements Unit, testified he interpreted the confiscated letter to mean petitioner and other gang members had conspired to assault Franks for engaging in homosexual activity.  (*Id.*, pg. 8).

Petitioner also points to the fact Franks made a statement indicating he and petitioner, "never had problems, never had an altercation.  Whatever this is supposed to be I've been friends ever since I knew him."  (DHR, pg. 15).  Petitioner likewise swore he never conspired with any fellow gang members to assault Franks.  This evidence, however, was presented to the disciplinary hearing officer, who did not believe either man's statement.  Upon review, this Court will not re-evaluate and re-weigh all the evidence in this case.  *See Hill*, 472 U.S. at 455, 105 S.Ct. at 2774.  The question for this Court is not whether the evidence against petitioner, i.e. the officer's written statement and documentary evidence, was more believable than the evidence in his favor, i.e. petitioner's testimony and Franks's statement.

Finally, petitioner insisted at the disciplinary proceedings that the accusing officer reveal the names of the other gang members who conspired with petitioner to assault Franks.  Sergeant Marler testified at the disciplinary hearing he could not disclose the names of the offenders with whom petitioner had conspired for safety reasons.  (Transcription, pg. 14).  This reason is constitutionally acceptable.  *See Wolff*, 418 U.S. at 566, 94 S.Ct. at 2974.

In sum, there was evidence petitioner had written a letter recounting the assault of Franks by several members, including himself, of the Black Gangster Disciples.  That evidence was not extensive.  The Court cannot say it would have made the same determination based upon the record evidence.  This Court, however, cannot substitute its judgment for that of the TDCJ and is unable to issue a ruling based upon what actions it would have taken.  *See Hudson*, 242 F.3d at 537. Rather, the Court is limited to determining whether there is "any evidence at all" supporting the determination of guilt.  *See id.*  In this case, there was evidence in the form of handwriting analysis, Sergeant Marler's testimony, the offense report, and the letter that petitioner was guilty of conspiring with other prisoners to assault Franks.  Because there was some evidence indicating petitioner was guilty, the first ground of error is without merit.  *See id.*

### B.  Insufficient Notice

In his second ground of error, petitioner appears to complain about the notice he received, although petitioner never specifies how the notice was deficient.  The record establishes petitioner received notice of the charge on July 16, 2009 at 3:53 a.m.  (Transcription, pg. 3; DHR, pg. 2).  The disciplinary hearing began on July 17, 2009 at 8:38 a.m.  (Transcription, pg. 2).  It was continued to July 20, 2009 so petitioner could obtain, through counsel substitute, a statement from Franks. (*Id.*, pg. 6).  Clearly, petitioner had twenty-four-hour advance written notice as required by *Wolff*, 418 U.S. at 570, 94 S.Ct. at 2981.

*Wolff* additionally requires the written notice to "inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense."  *Id.* at 564, 94 S.Ct. at 2979.  In this case, the notice on the Disciplinary Report stated:

> On the date and time listed above, and at the conclusion of an [sic] [Security Threat Group] investigation, offender: Murphy, Christopher, TDCJ-ID No. 00468377, did

conspire with other Black Gangster Disciple Members to assault (Offender Franks, Gerald #747346) by using physical contact to enforce discipline, a felony as defined by the laws of the State of Texas and in violation of Chapter 71.02 (engaging in organized activity).

(DHR, pg. 2). This notice informed petitioner of the specific charge against him and was sufficient to enable him to prepare a defense, as evidenced by the fact petitioner was able to obtain an exculpatory statement from Franks and able to ask the charging officer several questions pertinent to the charge. This notice met the *Wolff* specifications. *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2979. Petitioner's second ground of error is without merit.

### C. Jurisdiction

In his third point of error, petitioner contends respondent lacked jurisdiction to prosecute the offense. To be clear, petitioner was not charged with the felony of engaging in organized criminal activity in violation of section 71.02 of the Texas Penal Code. He was not brought before a state trial court. He did not stand trial before a jury. He did not receive an additional criminal conviction and an additional term of incarceration. Instead, petitioner was charged with violating Code 10 of the TDCJ's Disciplinary Rules and Procedures for Offenders, which states that it is a Level 1 violation of the disciplinary code for an inmate to commit an offense that would be defined as a felony in the State of Texas or in the federal government. As a punishment sanction he lost good-time days that were credited to him on the aggravated sexual assault sentence he currently serves.

The Supreme Court has given prison administrators, like TDCJ, the authority to develop and enforce any regulation "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Prohibiting criminal acts as defined by the penal code and limiting gang activity is a legitimate penological interest, and prison administrators have the authority to develop and implement regulations to curb such activity.

*Victoria W. v. Larpenter*, 369 F.3d 475, 484 (5th Cir. 2004) (citing *Turner*, 482 U.S. at 91-93, 107 S.Ct. at 2254).

In the instant case, TDCJ had the recognized right to implement regulations prohibiting gang activity. *See Turner*, 482 U.S. at 89, 107 S.Ct. at 2261. TDCJ chose to do so by referencing Texas law. Petitioner has failed to cite any law indicating TDCJ acted improperly in doing so. Petitioner is correct that TDCJ is not vested with the authority to prosecute a formal criminal case. The actions TDCJ took against petitioner, however, were not formal criminal proceedings. The challenged disciplinary action was a proceeding strictly confined to the arena in which TDCJ has authority. The punishment levied was within the guidelines given by Texas statute to the TDCJ. Petitioner was suspected of engaging in gang activity, and respondent had the jurisdiction to proceed in investigating, charging, hearing, finding guilty, and punishing petitioner for such an offense. *See Turner*, 482 U.S. at 89, 107 S.Ct. at 2261; *Larpenter*, 369 F.3d at 484. Petitioner's third point of error is without merit.

In sum, petitioner was given adequate, twenty-four hour advance written notice of the charge against him, a written statement by the fact finder of the evidence relied upon and the reasons for disciplinary action, and an opportunity to call witnesses. *Wolff*, 418 U.S. at 563-65, 94 S.Ct. at 2978-80. There was evidence supporting respondent's determination that petitioner was guilty. *See Hudson*, 242 F.3d at 537. The disciplinary proceedings met the requirements of the Constitution, as established by the Supreme Court. *See Wolff*, 418 U.S. at 563-65, 94 S.Ct. at 2978-80.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the application for a writ of habeas corpus filed by petitioner CHRISTOPHER

JAMES MURPHY be DENIED.

V.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of November, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).